IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
v                                 )          CR. NO. 2:09cr72-WKW-CSC
                                  )          (WO)
MIGUEL GUZMAN NAVARRO             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. Introduction

The defendant, Miguel Guzman Navarro ("Navarro"), was charged in a superseding indictment on May 28, 2009, with one count of conspiracy to distribute and possess cocaine and marijuana, in violation of  21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846; one count of possession with the intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 846; and three counts of using a communications facility to distribute a controlled substance, in violation of 21 U.S.C. § 843(b).  On May 18, 2009, Navarro filed a motion to suppress, in which he asserts that the traffic stop was pretextual requiring that the fruits of the search of the truck, including one kilogram of powder cocaine, be suppressed.  The court held an evidentiary hearing on the motion on August 26, 2009.  Based on the evidence presented to the court and argument of the parties, the court concludes that the motion to suppress is due to be denied.

### II. Facts

While patrolling the area near or around Chilton County, Alabama, on February 28, 2009, Alabama State Trooper Billy Wayne Fulmer, Jr., received a call from his supervisor,

Sergeant Charlton Martin, directing him to assist Drug Enforcement Agents in conducting a traffic stop.  Trooper Fulmer met the agents in an area in Chilton County and discussed the case with them.  The agents advised that, if Trooper Fulmer were to develop probable cause to stop the truck in which Navarro was driving, he should perform a traffic stop of the vehicle.

At some point, Trooper Fulmer learned that a vehicle fitting the description of Navarro's truck was driving East on County Road 24 in Chilton County.  Trooper Fulmer went to an area along County Road 24 and waited for the truck.  Upon locating the vehicle, Trooper Fulmer's radar clocked the truck as traveling 56 miles per hour in a 45 mile per hour zone.  Trooper Fulmer activated his patrol car's blue lights and stopped the truck.

Upon approaching the truck, Trooper Fulmer noticed that Navarro was breathing rapidly and appeared to be nervous.  Navarro indicated that he did not have a license or proof of insurance and initially told Trooper Fulmer that his name was Primivito Saias-Garcia. Trooper Fulmer asked Navarro to step out of his vehicle. Trooper Fulmer conducted a pat down of Navarro and asked him to sit in the front passenger's seat of his patrol car.

While sitting in the patrol car, Trooper Fulmer issued Navarro a citation for speeding and driving without proof of insurance.  After issuing the citation, Trooper Fulmer told Navarro that he was free to leave.  As Navarro opened the side passenger's door and began to exit the patrol car, Trooper Fulmer asked, "Can I ask you a question?" and Navarro got back into the patrol car.  Trooper Fulmer asked Navarro in Spanish if there were any weapons or drugs in the car and Navarro said, "No."  Trooper Fulmer continued speaking in

2

Spanish and asked Navarro for permission to search the truck.  Navarro responded, "Yes."  Trooper Fulmer handed Navarro a consent form written in Spanish.  After Navarro read and signed the form, Trooper Fulmer again asked in Spanish if he could search the truck and Navarro said, "Yes."  Upon searching the vehicle, Trooper Fulmer found in the truck's center cup holder a plastic sack wrapped around a small brick of a substance which appeared to be one kilogram of cocaine.

## III.  Discussion

Navarro contends that the stop and subsequent search of the truck was unreasonable in violation of his constitutional rights.  Specifically, the defendant contends that the patrol officer's initial stop of the truck based on speeding 56 miles per hour in a 45 mile per hour zone was merely a pretext for a search of the truck.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).  A police officer "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic . . . regulations relating to the operation of motor vehicles."  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (quoting *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990)).  In this case, the undisputed evidence indicates that Navarro was traveling 56 miles per hour in a 45 mile per hour zone.  Trooper Fulmer stopped the vehicle only after having probable cause to believe that Navarro had committed a traffic violation, specifically speeding 56 miles per hour in a 45 mile per hour zone.  The court concludes that a reasonable

officer in Trooper Fulmer's position could have stopped the defendant's vehicle for speeding, and, therefore, the stop was constitutionally permissible. This court therefore concludes that, to the extent Navarro challenges the stop of the vehicle, the motion to suppress should be denied.

The defense also asserts that the evidence should be suppressed because Navarro did not voluntarily consent to a search of his truck. Specifically, the defense argues that, "[t]here appears to be a language barrier between the Defendant and the state trooper, unless dispelled by testimony that they conversed in Spanish or that the Defendant does, in fact, understand English." (Doc. No. 114, Def's Motion to Suppress, pp. 3-4.)

Navarro consented to the search of his vehicle. Both before and after signing the consent form, Navarro gave Trooper Fulmer permission to search his truck. He also read and signed a consent form. To be effective, however, Navarro's consent must have been voluntarily given. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). In *Schneckloth*, the Court held that the voluntariness-of-consent analysis is conducted with reference to the totality of the circumstances, setting forth the following factors for the court to consider: the person's youth, his lack of education, evidence of the person's low intelligence, the existence of advice as to the nature of the constitutional right implicated, the length of detention preceding the request for consent, the nature of prior questioning, the environment, and whether any physical punishment was involved. *United States v. Zapata*, 180 F.3d 1237, 1241 (11th Cir. 1999) (citing *Schneckloth*, 412 U.S. at 226). To be considered voluntary, a consent to search "must be the product of an essentially free and unconstrained

4

choice." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989).

The defense does not contend that Navarro's age or intelligence mitigated his ability to consent voluntarily to the search. Navarro testified that he completed the sixth grade and that he is able to read in Spanish.[1] It is undisputed that Trooper Fulmer did not draw a weapon or physically punish Navarro. In addition, Navarro was detained for a relatively short period of time and the environment in which consent was given was not oppressive. *See United States v. Espinosa-Orlando*, 704 F.2d 507, 513 (11th Cir. 1983) (holding environment not unduly coercive where individual was arrested at gunpoint, was forced to lie on the ground near the roadway, and gave consent while officer still had gun drawn); *see also Berkemer v. McCarty*, 468 U.S. 420, 438-39 (1984) (holding public highway is setting generally less coercive than police station). Rather, the defense focuses on Navarro's limited understanding of English as support for the argument that Navarro did not voluntarily consent to a search of his truck.

In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police. *Zapata*, 180 F.3d at 1242; *United States v. Galvan-Muro*, 141 F.3d 904, 907 (8th Cir. 1998) (holding that defendant had necessary understanding of English where officer testified that defendant had no trouble understanding officer's questions and defendant answered officer's questions "quickly and with some elaboration"); *United States v. Carrate*, 122 F.3d 666,

---

[1] The court notes that, during the suppression hearing, Navarro testified in Spanish and an interpreter translated his statements for the court.

670 (8th Cir. 1997) (holding that defendant had necessary understanding of English where he gave appropriate responses to officers' questions); *United States v. Sanchez-Valderuten*, 11 F.3d 985, 991 (10th Cir. 1993) (holding that defendant had necessary understanding of English where he produced driver's license and registration immediately upon request and appropriately responded to officers' questions regarding his travel plans).

In this case, Trooper Fulmer conversed with Navarro in Spanish when he asked him whether there were weapons or drugs in the truck and whether he would consent to a search of the vehicle. In response to questioning, Navarro twice gave his consent to search the truck. There is no evidence that Navarro was confused by, or did not understand, any of Trooper Fulmer's questions. In addition, the consent form which Navarro read and signed is written in Spanish. During the suppression hearing, Navarro testified that he understood the form to be an authorization for Trooper Fulmer to search the vehicle and that he signed the document and consented to the search because he believed law enforcement "would search the vehicle anyway." Thus, Navarro's own testimony indicates that he was capable of understanding that Trooper Fulmer was requesting his consent to search. The purported limitations on Navarro's understanding of English did not preclude him from making "an essentially free and unconstrained choice" to grant Trooper Fulmer's request to search the truck. There is no evidence before the court that Trooper Fulmer took any coercive action that led to Navarro's belief that a search was inevitable. Navarro's unilaterally developed belief does not vitiate the voluntariness of his consent. Consequently, Navarro's motion to suppress the evidence based on the voluntariness of his consent should be denied.

## IV.  Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be denied.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **September 11, 2009.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28st day of August, 2009.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE